IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| TED L. WAYNE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. CV04-450-S-EJL |
| | ) | |
| vs. | ) | **MEMORANDUM ORDER** |
| | ) | |
| GOV. DIRK KEMPTHORNE, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Pending before the Court in this case are the following motions ripe for adjudication: Plaintiff's Motion for a Hearing (Docket No. 32); Defendant Barowsky's Motion for Summary Judgment (Docket No. 10), joined by Defendant Payette County (Docket No. 23); Defendant Barowsky's Motion to Seal Document (Docket No. 14); and Defendant Barowsky's Motion to Strike (Docket No. 25). Having reviewed the motions, responses, and the record in this case, the Court determines that oral argument is unnecessary. Accordingly, the Court enters the following Order.

**MEMORANDUM ORDER  1**

I.

BACKGROUND

Plaintiff has been incarcerated at the Payette County Jail from June 23, 2004, through the present date. The issue in this case is whether Defendants were deliberately indifferent to Plaintiffs' medical condition by keeping Plaintiff's nitroglycerin at the guard's station rather than allowing him to keep it in his cell, which caused some delay in administering the medication when needed. The nitroglycerin was prescribed on an "as needed" basis. The Defendants remaining in this action are Sheriff Barowsky and Payette County.

II.

PRELIMINARY MOTIONS

Defendants move to strike the Affidavits attached to Plaintiff's Response to the Motion for Summary Judgment. The Affidavits are not notarized, have various handwritten modifications to the typed text, and are obviously from laypersons who cannot testify as to medical causation issues. However, given Plaintiff's status as an incarcerated pro se litigant, the Court will not strike the Affidavits, but will consider the general content that Plaintiff is trying to present, which is (1) that it usually took between 5 and 10 minutes, and sometimes 10 to 15 minutes, for jail deputies to respond when he or other inmates called for the nitroglycerin; (2) that on one occasion approximately one hour elapsed between the time Plaintiff first began to summon staff and the time staff administered Plaintiff's nitroglycerin

**MEMORANDUM ORDER   2**

to him; and (3) that jail deputies would not allow Plaintiff to keep the nitroglycerin in his cell. *See* Docket Nos. 24 & 31.[1]

Defendants have also submitted a Motion to Seal the Affidavits of Dr. Ron Carroll and Jail Commander Troy Sallee because they contain Plaintiff's confidential medical information and medical records. Good cause appearing, the Motion is granted.

## III.

## MOTION FOR SUMMARY JUDGMENT

**A.   Standard of Law**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In a motion for summary judgment, the moving party bears the "initial burden of identifying for the court those portions of the record which demonstrate the absence of any genuine issues of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986)). If the moving party points to portions of the record demonstrating that there appears to be no genuine issue of material fact as to claims or defenses at issue, the burden of production shifts

---

[1] Docket No. 31 is entitled "Complaint," but it clearly addresses the issues in this action. Therefore, the Court has treated it as a supplemental response to motion for summary judgment.

**MEMORANDUM ORDER - 3**

to the non-moving party. To meet its burden of production, the non-moving party "may not rest upon the mere allegations contained in his complaint, but he must set forth, by affidavits, exhibits or otherwise, specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56; *see T.W. Electric Serv.*, 809 F.2d at 630 (internal citation omitted). The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party. All inferences that can be drawn from the evidence must be drawn in a light most favorable to the nonmoving party. *T.W. Elec. Serv.*, 809 F.2d at 630-31 (internal citation omitted).

To prevail on an Eighth Amendment claim regarding prison medical care, Plaintiff must show that prison officials' "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976)). The Supreme Court has opined that "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.*

> The Ninth Circuit has defined a "serious medical need" in the following ways: failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain; . . . [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.

*McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds*, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).

Deliberate indifference exists when an official knows of and disregards a serious medical condition or when an official is "aware of facts from which the inference could be drawn that a substantial risk of harm exists," and actually draws such an inference. *Farmer v. Brennan,* 511 U.S. 825, 838 (1994). Differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). Mere indifference, medical malpractice, or negligence also will not support a cause of action under the Eighth Amendment. *Broughton v. Cutter Lab*, 622 F.2d 458, 460 (9th Cir. 1980). A mere delay in treatment does not constitute a violation of the Eighth Amendment, unless the delay causes serious harm. *Wood v. Housewright*, 900 F.2d 1332, 1335 (9th Cir. 1990).

**B.    Discussion**

    1.    Sheriff Barowsky

To determine whether summary judgment should be granted on the claim that Sheriff Barowsky was deliberately indifferent to Plaintiff's medical condition, the Court must review the medical care provided to Plaintiff and Sheriff Barowsky's awareness of Plaintiff's medical condition and treatment.

During the time period in question, Ron Carroll, M.D., was the contract physician with

**MEMORANDUM ORDER   5**

Payette County Jail. He treated Plaintiff on at least four occasions. It is Dr. Carroll's opinion that Plaintiff was unstable and that it was inadvisable to allow him to keep his nitroglycerin in his cell for self-treatment. *See Affidavit of Ron Carroll*, at ¶¶ 4-7 (Docket No. 15). Dr. Carroll had been advised by jail staff that Plaintiff had passed out from taking too many nitroglycerin in the past.[2] *See id*. An overdose of nitroglycerin can cause low blood pressure, dizziness, and fainting spells. *See id*. at ¶ 4. Dr. Carroll was aware that the guard station was in close proximity (25 to 53 feet) to Plaintiff's cell. *See id*. at ¶ 6. Dr. Carroll's decision to not allow Plaintiff to have his medication in his cell was also based upon Dr. Carroll's direct observation of Plaintiff. *See id*. at ¶ 6. Dr. Carroll advised jail staff to keep Plaintiff's nitroglycerin at the guard station and administer it to him on an as-needed basis. *See Affidavit of Dr. Ron Carroll* (Docket No. 15).

Attached to Dr. Carroll's Affidavit is a letter from Dr. Henry Elzinga, who previously treated Plaintiff at the VA Medical Center in Boise. Dr. Elzinga opined that jail staff should be the ones who determine whether it would be safe for Plaintiff to have his nitroglycerin in his cell. *See id*., Exhibit C. Dr. Elzinga's letter also indicates that, if Plaintiff was having

---

[2]Plaintiff disputes the cause of his passing out. However, the dispute is not relevant because the truth of the matter is not at issue, but only the content of the information that was presented to Dr. Carroll. There is no evidence that Sheriff Barowsky knew of or had anything to do with Plaintiff's incidents of passing out or that Sheriff Barowsky gave information about Plaintiff's incidents of passing out to Dr. Carroll.

**MEMORANDUM ORDER   6**

trouble passing out, a dosage of nitroglycerin could aggravate the situation, making his blood pressure even lower, which would increase risk of stroke or heart attack. *See id*.

Between June 2004 and November 2004, deputies summoned paramedics to the jail to treat or observe Plaintiff sixteen times. *See id*. at ¶ 13. Plaintiff refused treatment on two of those occasions. *See id*.

Plaintiff cannot prevail against Sheriff Barowsky unless he shows (1) that Barowsky participated in or directed the violations, or (2) that Barowsky knew of the violations and failed to act to prevent them. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). There is no respondeat superior liability under § 1983. *Id*.

Plaintiff has not shown that Sheriff Barowsky was involved in or directed the decisions regarding Plaintiff's medication. Even if Sheriff Barowsky knew of the decision to keep Plaintiff's medications at the deputies' station and knew that it usually took 10 to 15 minutes to administer the medication if needed, there has been no showing that he was deliberately indifferent to Plaintiff's medical condition.

Plaintiff has provided nothing showing that it was deliberately indifferent for jail staff to keep Plaintiff's nitroglycerin at the deputies' station, given Dr. Carroll's and Dr. Elzinga's opinions regarding the risks of an overdose of nitroglycerin. While Plaintiff had to wait a longer period of time (5 to 15 minutes) to have the nitroglycerin administered than if he could administer the medication himself, the record shows that deputies often checked with emergency medical personnel as to whether it was prudent to administer the nitroglycerin in light of the risks. On at least one occasion, deputies were advised not to administer the

**MEMORANDUM ORDER** 7

medication because it could cause greater harm.

Plaintiff has submitted two Affidavits showing that summoning a deputy and administering the medication took approximately one hour on one occasion. *See Affidavits attached to Supplemental Response* (Docket No. 31). Even if this is true, a single incident of a one-hour delay does not show deliberate indifference in light of the remainder of the record. *Cf. Easter v. Powell*, 2004 WL 2271422 (D. Tex. 2004) (delay of four hours in administering nitroglycerin was a question of deliberate indifference for the jury).

The fact that jail personnel called emergency medical personnel sixteen times shows that deputies did not ignore Plaintiff's condition, but frequently called on medical personnel to render an opinion on how best to help Plaintiff. The fact that nitroglycerin could help or harm Plaintiff further shows that keeping the medication at the deputies' station and the resulting slight delays in treatment were not the result of deliberate indifference, but a calculated medical choice. Differences in judgment between an inmate and prison medical personnel regarding appropriate medical treatment are not enough to establish deliberate indifference. *See Sanchez v. Vild*, 891 F.2d at 242. Because Plaintiff has failed to show either that (1) Sheriff Barowsky knew of and disregarded Plaintiff's serious medical condition, or that (2) the Sheriff was aware of facts from which the inference could be drawn that a substantial risk of harm existed in the manner in which the medication was administered

and ignored that risk, *see Farmer*, 511 U.S. at 838, the claims against Sheriff Barowsky are subject to summary judgment.

    2.    <u>Payette County</u>

Plaintiff brings two Eighth Amendment claims against Defendant Payette County: (1) that it had a policy of not allowing him to have medication in his cell, and (2) that it had a policy of not providing medical treatment to him. The law is clear that a local governmental entity may not be sued except where it is alleged that the execution of a government's policy or custom inflicted the injury of which Plaintiff complains. *Monell v. Dept. of Soc. Serv. of New York*, 436 U.S. 658, 694 (1978). That is, "a municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). There is no respondeat superior liability under § 1983. *Id.* Requisite elements of a § 1983 claim against a municipality are the following: (1) the plaintiff was deprived of a constitutional right; (2) the county had a policy; (3) the policy amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy was the moving force behind the constitutional violation. *Mabe v. San Bernardino County, Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001) (citing *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir.1996) (internal quotation marks omitted)).

Payette County Jail had a policy of prohibiting inmates from having medication in their possession. An exception to this policy existed for heart medications and inhalers authorized

**MEMORANDUM ORDER   9**

by a physician. While Plaintiff had heart medication authorized by a physician, the particular physician treating Plaintiff did *not* authorize Plaintiff to have the medication in his own cell.

As shown above, the reasons for deviating from the general policy were medically sound. While Plaintiff did have to suffer pain for a slightly prolonged period of time – from ten to twenty minutes for jail personnel to determine whether to administer the medication and then actually administer it – that is balanced by the risk involved if Plaintiff himself ingested nitroglyercin when his blood pressure was already low, which may have caused a stroke or heart attack.

As to Plaintiff's second assertion, that the County had a policy of not providing him with medication, the record does not support this contention. Paramedics were summoned sixteen times to treat Plaintiff. Plaintiff has not shown any actual harm resulting from the County's alleged failure to treat him.

There is nothing showing that Payette County had a policy that caused a civil rights violation in Plaintiff's case, and there is nothing showing that Defendants were deliberately indifferent in the manner in which Plaintiff's medication was administered. As a result, the claims are subject to summary judgment.

Because summary judgment is appropriate, the Court shall deny Plaintiff's Motion for a Hearing (Docket No. 32).

## IV.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED:

A. Defendant Barowsky's Motion for Summary Judgment (Docket No. 10) is GRANTED.

B. Defendant Barowsky's Motion to Seal Affidavits (Docket No. 14) is GRANTED.

C. Defendant Barowsky's Motion to Strike (Docket No. 25) is DENIED.

D. Defendant Payette County has joined in the pending Motion for Summary Judgment (Docket No. 23), and therefore summary judgment as to Payette County is GRANTED.

E. Plaintiff's Motion for a Hearing (Docket No. 32) is DENIED.

F. This case is dismissed with prejudice.

DATED:  **July 12, 2005**

Honorable Edward J. Lodge
U. S. District Judge

**MEMORANDUM ORDER   11**